In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1419

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant*,

*v.*

WALMART STORES EAST, L.P., and WAL-MART STORES, INC.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 18-cv-804-bbc — **Barbara B. Crabb**, *Judge*.

ARGUED DECEMBER 2, 2020 — DECIDED MARCH 31, 2021

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The Walmart store in Hayward, Wisconsin, is open 24 hours a day, 7 days a week. It is especially busy on Fridays and Saturdays from late May to late August, the peak tourism season. Assistant managers help the manager run the store, which tries to have assistant managers on hand all the time. The store also hires additional managers and supervisors who work by the hour. In April 2016 Walmart offered Edward Hedican a job as one of eight

full-time assistant managers. After receiving the offer, Hedican revealed that, as a Seventh-day Adventist, he cannot work between sundown Friday and sundown Saturday. That disclosure led to a reevaluation of the offer and to this suit under Title VII of the Civil Rights Act of 1964.

Lori Ahern, the store's human resources manager, assessed whether Walmart could accommodate Hedican's religious practices. She concluded that doing so would require assigning the other seven assistant managers to additional Friday night and Saturday shifts, even though they prefer to have weekends off. With eight assistant managers available, any given assistant manager works (on average) six weekend shifts out of every ten weeks. (The historical range has been 48% to 82% of Saturdays, in particular.) If one of the assistant managers could not work from Friday sundown to Saturday sundown, six would rise to seven. And it would disrupt the work schedule. Six of the eight assistant managers work five days in a row, ten hours a day (for 50-hour weeks); the other two work four days in a row, 12 hours a day (for 48-hour weeks). That system could be preserved if, for example, Hedican were assigned permanently to one of the 4-day-12-hour slots, and his days never included weekends. But then other assistant managers would need to work even more weekend days, and the store's practice of rotating all eight assistant managers through all eight of the schedules would end. The store's manager believes that each assistant manager should have experience with all available schedules, which (because of how these were arranged) also requires each to work in all of the store's departments—for although the store is open all the time, many of its departments (including liquor and firearms) are closed some of the time. The manager thinks that each assistant manager

should be able to handle every department, something that could be especially important if because of illness, vacation, resignation, or retirement the store has fewer than eight assistant managers available.

Ahern concluded that accommodating Hedican would leave the store short-handed at some times, or would require it to hire a ninth assistant manager, or would compel the other seven assistant managers to cover extra weekend shifts despite their preference to have weekends off. She therefore raised with Hedican the possibility that he apply for an hourly management position, which would not be subject to the rotation schedule for the eight assistant managers. Hedican did not do so. Instead he filed a charge with the Equal Employment Opportunity Commission, which decided to prosecute a failure-to-accommodate suit on its own behalf. See *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002).

Title VII forbids employment discrimination on account of religion. 42 U.S.C. §2000e–2(a)(1). Section 2000e(j) adds:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

Walmart contends that its invitation to Hedican to apply for an hourly management position satisfies its duty to accommodate his religious practice and that any greater obligation would yield an "undue hardship" as that term was understood in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977): "To require [an employer] to bear more than a *de minimis* cost in order to give [an employee] Saturdays off is an undue hardship." (From now on, we'll use the phrase "slight

burden" to avoid the Latin.) On motion for summary judgment, the district judge sided with Walmart. 2020 U.S. Dist. LEXIS 8596 (W.D. Wis. Jan. 16, 2020). The judge thought that an hourly management job would have been a reasonable accommodation, even though the entry-level pay of that position is lower than the entry-level pay of an assistant manager. And the judge believed that interference with the store's rotation system would exceed a slight burden.

The EEOC's appeal observes that an opportunity to apply to be an hourly manager is not necessarily an accommodation; after all, an applicant may be turned down, and the need to apply seems a gratuitous insult to someone who has already been offered a managerial job. Walmart responds that Ahern's invitation to Hedican to apply for an hourly position meant no more than a request that he fill out some papers different from the documents required to assume the position of assistant manager. Cf. *Wright v. Runyon*, 2 F.3d 214 (7th Cir. 1993). We shall never know what would have happened if Hedican had used this opportunity, because he was not interested in it. Ahern testified by deposition that "I did communicate to [Hedican] what [hourly] positions were open at the Hayward store and directed him on how to apply if those were of interest to him. He said those were not." Given an opportunity in his own deposition to contradict Ahern, Hedican did not say that an hourly position would have been accepted. The difference between an offer of an hourly management job, and an opportunity to apply for an hourly management job, therefore does not matter to the outcome of this suit. Walmart made an offer that could have put Hedican in a management job without working on the Sabbath, but he wanted to be an assistant manager and noth-

ing less. Unless Title VII entitles Hedican to that position, Walmart must prevail.

According to the EEOC, Walmart could have offered Hedican several accommodations that would have enabled him to be an assistant manager. One would have been to give him that job and let him trade shifts with other assistant managers. But that would not be an accommodation *by the employer*, as Title VII contemplates. This proposal would thrust on *other workers* the need to accommodate Hedican's religious beliefs. That's not what the statute requires. *Hardison* addressed and rejected the sort of shift-trading system that the EEOC now proposes. 432 U.S. at 78–79. The Supreme Court held that Title VII does not require an employer to offer an "accommodation" that comes at the expense of other workers.

There's a further problem: What would Walmart do if other workers balked, as they did in *Hardison*? (The union in *Hardison* refused to modify the rules to require workers with more seniority to take less-desirable shifts.) If, say, four of the seven other assistant managers declined to take extra weekend shifts, that would consign the remaining three to work, not six Saturdays out of ten, but nine or ten Saturdays out of ten. In *Hardison*, which dealt with workers at a large repair and maintenance facility, there were many potential trading partners; at the Walmart store in Hayward, there are only seven (fewer if vacations, vacancies, or sick leave reduce the staff).

Another possibility, according to the EEOC, would have been to assign Hedican permanently to the 4-day-12-hour shift and ensure that it never included Fridays or Saturdays. Once again this is a proposal to require more weekend work

by the other assistant managers—and without their approval, as a shift-trading system entails. We repeat that the burden of accommodation is supposed to fall on the employer, not on other workers. See also *Porter v. Chicago*, 700 F.3d 944, 951–53 (7th Cir. 2012) (holding that Title VII does not require an accommodation that would require other workers to work extra weekend shifts); *Baz v. Walters*, 782 F.2d 701, 707 (7th Cir. 1986) ("An employer need not disturb the job preferences of other employees to accommodate an employee's religious observance."). The EEOC's approach also would make it difficult for Walmart to maintain its rotation system, designed to ensure that all of the assistant managers can handle all of the departments. If Hedican became a specialist in some departments, Walmart would encounter more than a slight burden when he went on vacation or sick leave.

And all of the EEOC's other proposals also would require Walmart to bear more than a slight burden when vacations, illnesses, and vacancies reduced the number of other assistant managers available. These proposals need not be discussed in detail, though it is appropriate to note that the EEOC's suggestion that Walmart simply accept the presence of fewer assistant managers on weekends is a parallel to the argument, which *Hardison* rejected, that Title VII requires employers to hire workers for four-day rather than five-day weeks and accept that some days will be short-staffed. 432 U.S. at 80, 84–85.

Three Justices believe that *Hardison*'s definition of undue hardship as a slight burden should be changed. See *Patterson v. Walgreen Co.*, 140 S. Ct. 685 (2020) (Alito, J., concurring, joined by Thomas & Gorsuch, JJ.). See also *Small v. Memphis Light, Gas & Water*, 952 F.3d 821, 826–29 (6th Cir. 2020)

(Thapar, J., concurring). Our task, however, is to apply *Hardison* unless the Justices themselves discard it. See, e.g., *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("it is this Court's prerogative alone to overrule one of its precedents"). Because accommodating Hedican's religious practices would require Walmart to bear more than a slight burden (if he became one of the eight assistant managers), and because Title VII does not place the burden of accommodation on fellow workers, the district court's judgment is

AFFIRMED.

ROVNER, *Circuit Judge*, dissenting. I respectfully part ways with my colleagues because I think there is a question of fact as to whether Walmart did enough to explore ways of accommodating Hedican's religion. I would therefore reverse and remand for a trial.

Although Ahern considered whether it might be feasible to adjust other assistant managers' schedules in some manner (including voluntary shift-trades) so that Hedican would never have to work on a Friday night or Saturday, one thing she did not do is consult with the other managers in making her assessment. I agree with my colleagues that accommodating Hedican in this way posed a challenge, given the store's 24-hour schedule, busy weekends, and the demand among staff for time off on Fridays, Saturdays, and Sundays. Yet Hedican was available to work on Fridays, Saturday nights and Sundays, and if he were willing to disproportionately accept shift assignments during the 48 of 72 weekend hours outside of his observed Sabbath, then other managers might have been willing to pick up the slack on Friday nights and Saturdays. Ahern could not know for certain unless she asked, and yet she did not. *See* Walmart Br. at 48-49 n.5. I appreciate the store's need for predictability in scheduling, but had Ahern convened the managerial staff to discuss the possibilities, she might have discovered that it was in fact feasible to accommodate both Hedican and the other managers. *Cf. Opuku-Boateng v. California*, 95 F.3d 1461, 1471-72 (9th Cir. 1996) (flawed, informal poll of other workers insufficient to demonstrate that shift-trades were not a feasible means of accommodating plaintiff's inability to work on Sabbath).

Discussion of the difficulty of accommodating Hedican brings to mind the sorts of excuses employers long trotted out

for why it was impractical to hire women of child-bearing age: that employers could not afford to waste resources training employees who would quit as soon as they were pregnant; that projects and deadlines could not accommodate the gaps of maternity leave and the vagaries of daycare and school schedules; that client needs could not be met on a nine to five, Monday through Friday schedule. Indeed, child-bearing and parenting did pose challenges for working women and their employers, but accommodations that were a long time in coming—flexible hours, remote work, job-sharing, family leave time—have shown why work and motherhood were never as incompatible as employers once thought.

That a business historically has been run in a certain way does not mean that is the only or best way in which it can be run. I grant that Walmart's scheduling needs are genuine. But the duty to reasonably accommodate entails an obligation to look at matters with fresh eyes and to separate what is necessary from what, to date, has been customary. I think there is a jury question as to whether Walmart went far enough in considering whether Hedican's religious scheduling needs could be accommodated.

Ahern did suggest that Hedican might instead apply for an hourly supervisory position. Setting aside any differences between the two positions (including starting pay), I am not convinced that inviting Hedican to *apply* for a different position for which he was obviously qualified constitutes a meaningful accommodation. After all, the company had already offered Hedican an ostensibly superior job. Now it was treating him as a near-stranger who needed to start over. The company's counsel suggested at argument that application for an hourly position was simply a matter of paperwork, but its

brief suggests otherwise,[1] and in any case it does not appear that this was ever communicated to Hedican. It was not Hedican's responsibility to ferret this out.

The record shows that Walmart gave serious thought to whether it could accommodate Hedican and I commend the company for the efforts it did make. But a jury could nonetheless conclude that more was required to discharge its duty of reasonable accommodation.

I respectfully dissent.

---

[1] *See, e.g.*, Walmart Br. at 9 (noting that with Ahern's help, Hedican would have a "leg up" in applying for other positions, as Ahern was involved with the interviewing), and 24 (faulting Hedican for not asking Walmart to bypass the usual application process for other positions).